## UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SMART SCIENCE LABORATORIES, INC.,
A Florida Corporation,

                              Plaintiff                     CASE NO. 8:07-cv-01554-SCB-EAJ

             v.

PROMOTIONAL MARKETING SERVICES, INC.
A New York Corporation, JASON KRONISH, ANN
GLASSMAN, ADRIANNE MILLMAN,
QUALITY KING DISTRIBUTORS INC., a New York
Corporation, CARDINAL HEALTH, INC., an
Ohio Corporation, MCKESSON CORP., a Delaware
Corporation, and AMERISOURCEBERGEN CORP.,
And JOHN DOES NOS. 1-30 And John Does Presidents
And JOHN DOES NOS. 1-10, Drug Store Retailers,

                              Defendants.

## QUALITY KING DISTRIBUTORS, INC.'S MOTION PURSUANT TO
## FED.R.CIV.P. 11 FOR SANCTIONS AGAINST SMART SCIENCE
## LABORATORIES, INC. AND ITS COUNSEL WITH MEMORANDUM OF LAW

Defendant Quality King Distributors, Inc. ("Quality King") moves pursuant to Fed.R.Civ.P. 11 for an Order: (i) finding that plaintiff Smart Science Laboratories, Inc. ("Smart Science") and its counsel engaged in frivolous conduct by asserting without a good faith basis the Fourth and Fifth Counts against Quality King and for filing its Opposition to Quality King's Motion to Dismiss; (ii) striking the amended complaint as against Quality King; and (iii) imposing monetary sanctions against Smart Science and its counsel, including reasonable attorneys' fees and other expenses incurred by Quality King as a result of defending against these frivolous claims.

## PRELIMINARY STATEMENT

Quality King is a wholesale distributor of, inter alia, health and beauty aids and sells over $1 billion in products every year, including topical creams, such as "JointFlex," which forms the basis of this lawsuit. Over the course of 2003 and 2004, Quality King purchased a relatively small amount of Joint Flex from Promotional Marketing Services, Inc. ("PMSI"). Plaintiff alleges that PMSI purchased that Joint Flex from Plaintiff but was only supposed to sell it directly to consumers and not to distributors or retailers. Plaintiff Smart Science has asserted claims of federal and state RICO against Quality King premised on the dubious notion that Quality King knew or had reason to believe that the JointFlex that Quality King purchased from co-defendant PMSI was procured by PMSI by fraud or stolen. Plaintiff seeks to impute this alleged knowledge to Quality King based solely on the purported fact that Quality King purchased the products from PMSI at a price so low that it would have been obvious the goods were fraudulently obtained. Significantly, however, Smart Science plead no facts whatsoever to support its unsubstantiated allegation that the purchase price was "low." In response to Quality King's motion to dismiss, Smart Science and its counsel represented to this Court that they had documents in their possession which provide a basis for that claim. However, since Smart

Science and its counsel submitted that pleading, Quality King has come to learn that Smart

Science and its counsel had in their possession – both at the time plaintiff filed its complaint, its

amended complaint, and its opposition to Quality King's Motion to Dismiss, and during the 21-

day waiting period provided by Rule 11(c)(2) prior to this motion being filed – documents

making plain that Smart Science and its counsel knew that the price Quality King paid defendant

PMSI was not artificially low but was in fact the highest price Quality King ever paid for

JointFlex.  Thus, Smart Science and its counsel acted in bad faith both in filing this frivolous

complaint against Quality King and particularly in opposing Quality King's Motion to Dismiss,

each of which was undertaken without a good faith basis or adequate factual investigation.  For

this misconduct, Smart Science and its counsel deserve to be sanctioned.

## STATEMENT OF FACTS

This case presents a straight-forward state law breach of contract and/or fraudulent

inducement claim, by plaintiff against PMSI.  Plaintiff has attempted to transform that simple

case into a RICO claim against entities such as Quality King who are not parties to the disputed

contract.  Plaintiff's pleading is fatally deficient, and frivolous as well.[1]

The relevant facts, as alleged by plaintiff, are as follows.  Plaintiff manufactures an over-

the-counter topical cream called "JointFlex," which allegedly acts as a pain reliever.  (Compl.

¶ 31.)[2]  In the first half of 2003, unbeknownst to Quality King, defendant PMSI offered to

include plaintiff's product in a promotional sampling package to be sold directly to consumers

---

[1] The counts purportedly directed at Quality King – Counts IV and V, which are federal and
Florida civil RICO claims, respectively – are the subject of a motion to dismiss that was filed on
February 6, 2008 and is currently sub judice.  However, it is unclear whether Count V (Florida
RICO) is directed to Quality King.  See Compl., ¶ 85.  Plaintiff filed an opposition to the Motion
to Dismiss on March 7, 2008.

[2] References to "Compl. ¶ __" are to the amended complaint, filed November 8, 2007.  (Docket
No. 10.)  The amended complaint is annexed as Exhibit A to the May 2, 2008 Declaration of
Andre K. Cizmarik ("Cizmarik Decl.").

(Compl. ¶¶ 43-45), and negotiated a discount with plaintiff.  (Compl. ¶ 46.)  PMSI and plaintiff

then entered into an agreement in May of 2003 embodying these terms.  (Compl. ¶ 46.)  Plaintiff

sold its product to PMSI between May and August of 2003, but stopped filling PMSI's orders

after August 2003 because it suspected that PMSI had breached its agreement with plaintiff.

(Compl. ¶ 48.)  The exact nature of that breach is difficult to determine from the complaint, but

appears to reside in the allegation that rather than selling JointFlex directly to consumers as

promised, PMSI sold the merchandise it purchased from plaintiff either directly to retailers or to

wholesalers (such as Quality King) who then resold it to retailers.

Plaintiff filed its initial complaint on August 30, 2007.  (Docket No. 1.)  That initial

complaint named, inter alia, Quality King as a defendant, but it was never served on Quality

King.  Instead plaintiff filed an amended complaint on November 8, 2007, alleging breach of

contract, fraudulent inducement and negligent misrepresentation claims against PMSI (Counts I-

III), and asserting a federal civil RICO claim (Count IV) against, inter alia, Quality King.[3]

(Docket No. 10.)  Plaintiff's complaint is completely devoid of sufficient allegations as to how or

why Quality King is a member of this purported "criminal racketeering enterprise."  Indeed it

fails to provide a single specific factual allegation about Quality King, other than alleging that

Quality King purchased and sold JointFlex cream, and that Quality King "knew or had reason to

know" that the JointFlex was "stolen" and "obtained by larceny."  (Compl., ¶¶ 76-77.)

On February 6, 2008, Quality King filed a Motion to Dismiss under Rule 12(b)(6).  On

March 7, 2008 plaintiff filed its Opposition to Quality King's Motion to Dismiss.  In its

Memorandum of Points and Authorities in Opposition to Quality King's Motion to Dismiss,

---

[3] Count V purports to allege a Florida RICO claim, but it is unclear whether that count is directed
to Quality King.  See Compl. ¶ 85.

3

Plaintiff asserts "that Quality King knew the goods were procured by fraud based upon the lower price" that Quality King paid for them.  (Opp. at 14.)[4]

Then, on March 19, 2008, Stephen Weitzman, Smart Science's attorney, e-mailed to Quality King's attorneys a July 20, 2004 letter from Alfred Paliani (General Counsel for Quality King) to Stephen Wein (Smart Science's outside counsel in a prior Middle District of Florida lawsuit captioned Smart Science Laboratories, Inc. v. A.M. Value, Inc. and Ged Koudis, Civil Action No. 03-CV-2728) responding to a non-party subpoena in that case.  (Cizmarik Decl., ¶5, Ex. C.)  Attached to that letter were purchase orders which listed various prices paid for JointFlex by Quality King to several suppliers, including PMSI.  (Cizmarik Decl., Ex. C.)  Although the e-mailed version sent to Quality King's counsel is faint (presumably plaintiff has in its possession a better copy), the prices paid by Quality King to PMSI for JointFlex were not "low," but were equal to or higher than the prices it paid to other suppliers.

Thereafter, Quality King's counsel sent a letter to Smart Science's counsel dated April 22, 2008 pointing out these facts.  In addition, a computer-generated report (printed from Quality King's business records) was also attached to that letter.  That report is perfectly legible. It confirms that the prices which Quality King paid to PMSI for JointFlex ranged from $83.00-$85.20 per case, whereas the price that Quality King paid to its other suppliers ranged from $81.00-$83.00 per case.  Thus, Quality King paid more for the JointFlex from PMSI, not less.

As a result, in its April 22, 2008 letter Quality King's counsel requested that Smart Science, under penalty of Fed.R.Civ.P. 11, withdraw its complaint and all allegations as against Quality King as well as the opposition to the Motion to Dismiss.  (Cizmarik Decl., Ex. E.)  In

---

[4] References to "Opp. at __" are to Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Quality King Inc.'s Motion to Dismiss, filed March 7, 2008.  Plaintiffs' Opposition is annexed as Exhibit B to the Cizmarik Decl.

response, on May 1 Smart Science's counsel insisted that a complete motion under Rule 11 be served upon it. (Cizmarik Decl., Ex. F.)  That was done on May 2, 2008.  Having not received a satisfactory response to that motion after waiting the time provided by Rule 11, Quality King filed its motion.

## ARGUMENT

### I.   SMART SCIENCE AND ITS COUNSEL ENGAGED IN FRIVOLOUS CONDUCT UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 11(b) of the Federal Rules of Civil Procedure states in relevant part:

> By presenting to the court … a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
>       \*   \*   \*
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed.R.Civ.P. 11(b) (emphasis added).  In this Circuit, "[t]he objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted."  Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998) (affirming district court's award of Rule 11 sanctions).  The court examines "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous."  Id.  Sanctions are warranted when, as here, a pleading "has no reasonable factual basis."  Id.

5

### A.    Smart Science's claims are objectively frivolous

Smart Science asserts that Quality King knew or should have known that PMSI procured JointFlex products by fraud solely because of the allegedly "lower" price Quality King paid for those products. (Opp. at 14; Compl., ¶¶ 76-77.) The use of the term "lower" indicates that Quality King paid more for JointFlex which it purchased from other suppliers. Yet, as Smart Science knows, this allegation is false because the price Quality King paid for the JointFlex purchased from PMSI was actually the same as or higher (and in some cases significantly higher) than the price it paid other suppliers for JointFlex. (Cizmarik Decl., Exs. C and D.) Smart Science and its counsel knew that the claims against Quality King were not grounded in fact as early as the filing of its complaint, as well as at the date of amendment, and when it filed its opposition to the Motion to Dismiss, and certainly no later than when it received the April 22 pre-motion letter preceding service of this motion. Therefore, the claims are "objectively frivolous."

### B.    Smart Science's counsel knew that the claims were frivolous when the pleadings were filed

Because it is indisputable that the plaintiff's claims are objectively frivolous, this Court must next consider "whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." Jones v. International Riding Helmets, Ltd., 49 F.3d 692, 695 (11th Cir. 1995). Here, the attorney who signed the pleadings knew or should have known that the claims were frivolous when the pleadings were filed, especially had a reasonable inquiry been made as to the evidence already in Smart Science's possession. All the evidence that Smart Science had when it filed its complaint and amended complaint, namely the July 20, 2004 letter from Alfred Paliani to Stephen Wein, indicated that Smart Science's claims against Quality King were frivolous,

because Quality King did not buy JointFlex from PMSI at a "lower" price. (Cizmarik Decl., Ex. C.) And, when Smart Science later filed its Opposition to Quality King's Motion to Dismiss, it had that same information demonstrating that its claims against Quality King were frivolous. Nevertheless, in its opposition to the motion, Smart Science and its counsel persisted in their frivolous theory, and made perfectly clear that the supposed "low" price is the lynchpin of their claim. (Opp. at 14.) Smart Science even made reference to these very documents. (Opp. at 14.) Accordingly, Smart Science and its counsel were obviously aware of these documents and their content at the time they signed and filed their opposition, yet they had the temerity to represent to this Court – and certified under Rule 11 – that to the best of their knowledge, information, and belief (found after a reasonable inquiry) the facts were just the opposite of what they knew them really to be.

Even assuming arguendo that the attorney signing the amended complaint was for some reason unaware of this information (which is hard to believe since it was in Smart Science's possession since 2004), Rule 11 sanctions nevertheless are still in order because the court must impose sanctions against the attorney even if he had a "good faith belief that the claims were sound" where he "failed to make a reasonable inquiry." Jones, 49 F.3d at 695. Here, there has been no showing that a "reasonable inquiry" was made. Certainly by the time of the filing of the opposition brief in Match 2008, the 2004 facts and documents were known, since they were referred to in the opposition. Thus, a duty of inquiry most certainly arose as of that time. Any "reasonable inquiry" into the facts and circumstances of this case would have revealed to plaintiff's counsel that its claims against Quality King were frivolous, to the extent they were premised on Quality King purchasing the JointFlex at a lower price, since the business records so show. Therefore, there was no evidence supporting Smart Science's allegation in November

7

2007 that Quality King knew or should have known that the merchandise it bought from PMSI was procured by fraud or was stolen, nor was there any when it filed its opposition brief.

      The frivolousness of plaintiff's claim becomes all the more apparent when it refused to withdraw the complaint after being served with Quality King's April 22 pre-motion letter and Rule 11 motion and accompanying declaration, both of which contains the "Joint Flex Purchase Report," again specifying the prices paid by Quality King for JointFlex. That report shows clearly that the price paid by Quality King for JointFlex from PMSI was equal to or higher than the price it paid other distributors (Cizmarik Decl., Ex. D), which contradicts plaintiff's allegations that Quality King knew or should have known that the products were obtained by fraud because of the low price, and contradicts the representation to this Court that the documents support plaintiff's claim – a representation which was made without providing those documents to the Court. (Opp. at 14.)

      It cannot be disputed that Smart Science's claims against Quality King are not grounded in fact, and that Smart Science and their counsel were aware of that fact as early as July 2004, as late as their Opposition on March 7, and certainly when the April 22 pre-motion letter was received. Smart Science and its counsel knowingly signed pleadings which are contrary to the facts and should be sanctioned for that, their lack of diligence and refusal to withdraw the complaint.

## II.   THIS COURT SHOULD STRIKE PLAINTIFF'S AMENDED COMPLAINT AND AWARD SANCTIONS AGAINST SMART SCIENCE

      Subdivision (c) of Rule 11 allows a party to move for sanctions where subdivision (b) has been violated. Fed. R. Civ. P. 11(c). Such sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's

fees and other expenses directly resulting from the violation." Id. "[T]he selection of the type of

sanction to be imposed lies within the district court's sound exercise of discretion." Didie v.

Howes, 988 F.2d 1097, 1104, n.6 (11th Cir. 1993); Footman v. Cheung, 341 F. Supp. 2d 1218,

1225 (M.D.Fl. 2004) ("Courts have a wide variety of possible sanctions to impose for violations

of Rule 11, including "striking the offending paper; issuing an admonition, reprimand or censure;

requiring participation in seminars or other education programs; ordering a fine . . .; [or]

referring the matter to disciplinary authorities.")

     Courts have awarded sanctions in a variety of types of cases, including those, like here,

where the record did not reflect a basis, in fact or in law, for the lawsuit. See, e.g., Jones, 49

F.3d at 695 ("in this case, the formulation of the plaintiff's discovery requests, and the specific

dates in those requests, reveal that [appellant's attorney] did not believe that the complaint

against [defendant] was well grounded at the time he signed the pleading."); Worldwide

Primates, Inc. v. McGreal, 26 F.3d 1089, 1091 (11th Cir. 1994) ("the record amply supports the

imposition of sanctions because it reflects no basis, either factual or legal, for [the] lawsuit");

Pelletier v. Zweifel, 921 F.2d 1465, 1515 (11th Cir. 1991) (affirming imposition of Rule 11

sanctions where "complaint had no reasonable factual basis when pled and [both plaintiff and his

attorney] knew this").

     The only allegation against Quality King which would support a finding that Quality

King knew the goods were allegedly obtained by PMSI by fraud or were "stolen," i.e., that it

paid a "lower" price for them, is not only factually baseless, but Smart Science and its counsel

had in their possession documents evidencing as much, and evidencing that their representations

to this Court in their Opposition to the Motion to Dismiss were also baseless.  Nevertheless, they

persisted in these frivolous contentions without making a reasonable inquiry (or worse

intentionally ignored these facts), as required by Rule 11(b).  As a result, this Court should strike Smart Science's complaint against Quality King and award sanctions in the full amount of the fees and costs incurred by Quality King in defending this case.

## CONCLUSION

For the reasons stated above, this Court respectfully should enter an Order:  (i) finding that Plaintiff Smart Science and its counsel engaged in frivolous conduct by asserting without a good faith basis its Fourth and Fifth Counts against Quality King and for filing its Opposition to Quality King's Motion to Dismiss; (ii) striking the Amended Complaint as against Quality King; (iii) imposing monetary sanctions against Smart Science and its counsel, including reasonable attorneys' fees and other expenses incurred by Quality King in connection with this case; and (iv) awarding such other and further relief in favor of Quality King and against Smart Science and its counsel that this Court deems just and proper.

Dated:   May 2, 2008
      New York, New York

Anthony J. Viola, *admitted pro hac vice*
Andre K. Cizmarik, *admitted pro hac vice*
Joseph E. Czerniawski, *admitted pro hac vice*
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, NY 10022
Telephone:  (212) 308-4411
Facsimile:  (212) 308-4844

Christopher S. Knopik
KNOPIK VARNER MOORE
One Harbour Place, Suite 800
777 S. Harbour Island Boulevard
Tampa, Florida 33602
Telephone:  (813) 221-3131
Facsimile:  (813) 221-3199

Attorneys for Defendant
Quality King Distributors, Inc.

NYC 298167.4

10

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Joseph J. Weissman, Esquire, Johnson, Pope, Bokor, Ruppel & Burns, LLP, 403 E. Madison Street, Post Office Box 1100, Tampa, Florida 33601; Stephen A. Weitzman, Esquire, 4950 Reedy Brook Lane, Columbia, Maryland 21044; and Robert J. Edwards, Esquire, Behar, Gutt & Glazer, P.A., 2999 NE 191st Street, Suite 500, Aventura, Florida 33180.

/s/ Christopher S. Knopik
Christopher S. Knopik, Esquire
Fla. Bar No.: 378348
KNOPIK VARNER MOORE
One Harbour Place, Suite 800
777 S. Harbour Island Blvd.
Tampa, Florida 33602
Telephone:     (813) 221-3131
Facsimile:     (813) 221-3199
cknopik@kvmlaw.com

and

Anthony J. Viola, Esquire
Andre K. Cizmarik, Esquire
Joseph E. Czerniawski, Esquire
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411
Facsimile: (212) 308-4844
aviola@eapdlaw.com
acizmarik@eapdlaw.com
jczerniawski@eapdlaw.com

Attorneys for Quality King Distributors, Inc.