UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SMART SCIENCE LABORATORIES,
INC., a Florida corporation,**

      **Plaintiff,**

v.                                          **CASE NO. 8:07-CV-1554-T-24EAJ**

**PROMOTIONAL MARKETING
SERVICES, INC., et al.,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

      Before the court are Defendant Adrianne Millman's **Motion to Dismiss Count II, Count III, Count IV, and Count V of the Amended Complaint and Motion to Strike Request for Attorney's Fees and Punitive Damages** (Dkt. 13), Plaintiff's **Opposition** (Dkt. 19),  Defendant **Quality King Distributors, Inc.'s Motion to Dismiss the Amended Complaint** (Dkt. 32), and Plaintiff's **Opposition** (Dkt. 48).[1]  Plaintiff Smart Science Laboratories, Inc. ("Smart Science") sues Promotion Marketing Services, Inc. ("PMSI"), Jason Kronish, Ann Glassman, Adrianne Millman ("Millman"), Quality King Distributors, Inc. ("Quality King"), McKesson Corp., Amerisourcebergen Corp., Cardinal Health, Inc., and numerous John Does for breach of contract, fraud, negligent misrepresentation, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), violations of the Florida RICO Act, Fla. Stat. § 895.01, et seq., and violations of the Florida Civil Remedies for Criminal Practices Act ("CRCPA"), Fla. Stat. § 772.101, et seq.  Smart Science alleges that this court's jurisdiction is founded on Smart Science's

---

[1] The district judge referred these matters to the undersigned for consideration and the issuance of a report and recommendation (Dkt. 50). See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

federal RICO claims under 18 U.S.C. § 1964(c) and that diversity jurisdiction also exists pursuant to 28 U.S.C. § 1332. (Amend. Compl. ¶ 27)

Smart Science filed its First Amended Complaint on November 8, 2007 (Dkt. 10). A default was entered against PMSI (Dkt. 41). All of the remaining named defendants, except for Millman and Quality King, have been dismissed for failure to file proof of service on those defendants. Millman and Quality King separately move to dismiss for failure to state a claim. Oral argument on the motions was held on May 14, 2008. Upon consideration, the undersigned recommends that both Millman's and Quality King's motions be granted and the complaint be dismissed without prejudice, affording Smart Science one final opportunity to amend.

## I.    **Background**

Smart Science manufactures an over-the-counter topical cream called "JointFlex," which acts as an arthritis pain reliever. In early 2003, Defendant PMSI solicited Smart Science's business through advertisements in the U.S. Mail addressed to Mr. Gene Weitz, Smart Science's President. PMSI offered to include JointFlex in a promotional sampling package to be sold directly to consumers, with the understanding that Smart Science would sell promotional tubes of JointFlex at a discount to PMSI, PMSI would include JointFlex in a multi-product promotion package of consumer goods (which consumers could order through the internet website http://www.nationwidebrands.com), and consumers would then be introduced to JointFlex and purchase it in retail stores. After negotiating a discount price for the promotional tubes of JointFlex, Smart Science and PMSI entered into an agreement in May 2003. Smart Science claims that in this agreement PMSI agreed not to sell or distribute JointFlex directly to the retail market.

Smart Science sold JointFlex to PMSI between May and August 2003, but stopped filling

PMSI's orders in August 2003 after suspecting that PMSI had breached the contract. Smart Science contends that it noticed a significant drop-off in its regular retail sales volume but marketing reports showed no decline in retail sales of JointFlex. Smart Science alleges that, instead of selling the product only to consumers as agreed, PMSI was selling the product to wholesalers, product diverters, and others who would then resell the product to retailers (such as national chain drug stores, supermarkets, and discount stores that normally bought the product directly from Smart Science) at greatly reduced prices.[2] Smart Science claims that PMSI's conduct was a fraudulent scheme that violated federal and state RICO laws.

Specifically, Smart Science alleges that in violation of 18 U.S.C. §§ 1962(a)-(d), PMSI (through a pattern of racketeering activity) "systematically engaged in . . . fraudulently procuring consumer products from manufacturers . . . at substantial discounts" and illegally selling those products "through its 'enterprise' to wholesalers and others who then [resell] the products at prices that undercut the manufacturer's normal selling price to the retail trade normally serviced by such manufacturers." (Amend. Compl. ¶ 69) Smart Science states that PMSI used the U.S. Mail and "wire communications" (telephone and facsimile) to facilitate the fraudulent scheme, which conduct constituted mail fraud and wire fraud under 18 U.S.C. § 1341. (Id. at ¶¶ 43-47, 70) Smart Science contends that PMSI is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which is engaged in (or the activities of which affect) interstate commerce and "into which ill-gotten profits are recycled." (Id. at ¶¶ 19, 34, 41, 70)

---

[2] Smart Science alleges that PMSI purchased the JointFlex samples from Smart Science at $3.50 per tube as opposed to the normal wholesale price of $9.95 per tube. (Amend. Compl. ¶ 48) Absent from the Amended Complaint are allegations about the prices at which PMSI allegedly resold the sample tubes to wholesalers and product diverters, or the prices at which the wholesalers and product diverters allegedly resold the sample tubes to retailers.

Millman, PMSI's Chief Executive Officer, was the "mastermind" of the alleged fraud according to Smart Science. (Id. at ¶¶ 20, 35) Defendant Quality King is alleged to be a wholesaler or product diverter that participated with PMSI to perpetuate the fraud. (Id. at ¶¶ 23, 25, 38, 76)

Despite Smart Science's jurisdictional allegations, Millman alleges that she is a Florida citizen and no diversity jurisdiction exists (Dkt. 13 at 2).  If Millman's citizenship allegations are true, the federal RICO claim provides the sole basis for federal subject matter jurisdiction.  Thus, the court first considers Defendants' motions to dismiss only as they address the federal RICO claim.

## II.    **Motion to Dismiss Standard**

In considering a Rule 12(b)(6) motion to dismiss, a court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff.  Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation omitted).  To satisfy the pleading requirements of Rule 8, Federal Rules of Civil Procedure, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation omitted).  Until the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955 (2007), the rule was that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted), abrogated by Twombly, 127 S. Ct.1955. However, under Twombly, to survive dismissal a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1974.  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted).  Dismissal of a complaint is warranted if, assuming the truth of the complaint's factual allegations, a dispositive legal issue exists that precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989) (citations omitted).

## III.   Pleading a RICO Claim

Smart Science pleads its federal RICO claim in Count IV of the Amended Complaint which alleges violations of 18 U.S.C. §§ 1962(a)-(d).[3]  The RICO statute provides:

---

[3] Count V alleges violations of Florida's RICO counterpart, the Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.101, et seq.  Because Florida's RICO statute is patterned after the federal law, the analysis is the same for both. Jackson v. Bellsouth Telecommc'ns, 372 F.3d 1250, 1263-64 (11th Cir. 2004). The pertinent part of the Florida RICO statute provides that "[i]t is unlawful for any person":

> (1) Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

> (2) Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

> (3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

> (4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

Fla. Stat. §§ 772.103(1)-(4).  Under Florida law, a "pattern of criminal activity"

> means engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(a)-(d).

Four elements of proof are required to establish a civil RICO claim: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. With regard to the first two elements,

---

incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity. For the purposes of this chapter, the term "pattern of criminal activity" shall not include two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons.

Fla. Stat. § 772.102(4).

Plaintiff must establish conduct of an enterprise and that the enterprise had a common goal. Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282, 1283 (11th Cir. 2006) (citations omitted). "A RICO enterprise exists where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." Jackson, 372 F.3d at 1264 (internal quotation marks and citation omitted). A successful allegation of a pattern of racketeering activity charges that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." Id. (citations omitted) (emphasis in original). However, two isolated criminal acts may be insufficient to constitute a pattern; the RICO statutes target ongoing criminal activity as opposed to sporadic, isolated, unrelated criminal episodes. Id.

The "continuity" element of a pattern of racketeering activity is critical to a valid RICO claim. The Supreme Court has explained that:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. . . . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

Id. at 1265 (quoting H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241-42 (1989)) (emphasis in original). "In open-ended cases that rely on alleging the *threat* of continuity, plaintiffs can meet their burden by establishing either that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, or that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Id. (internal quotation marks and citation omitted) (emphasis in original).

7

A civil RICO claimant must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." Mohawk, 465 F.3d at 1282-83.  With this background, each motion to dismiss is addressed below.

        a.      **Millman's Motion to Dismiss (Dkt. 13)**

Millman moves to dismiss Count II (fraud in the inducement), Count III (negligent misrepresentation), Count IV (federal RICO claim), and Count V (Florida RICO claim).  Arguing that the Amended Complaint is devoid of any allegations of actions taken by her in her individual capacity, Millman states that all acts alleged by Smart Science in Count IV are those of PMSI, Millman's employer.   Millman also contends that Count IV fails against her because (1) she is not a distinct entity from the alleged enterprise; (2) Smart Science has failed to establish mail and wire fraud; (3) Smart Science has failed to allege any injury caused by the use or investment of income derived from racketeering activity; and (4) Smart Science fails to allege, with the specificity required by Rule 9(b), facts giving rise to more than one predicate act (Dkt. 13 at 4). Moreover, Millman claims that she was a Florida citizen as of the date of the original Complaint's filing and thus, no basis for federal jurisdiction exists if the court dismisses the federal RICO claim.

"The [RICO] enterprise is an entity, . . . a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). An enterprise's existence "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000) (internal quotation marks and citation omitted). The most important factor that defines an enterprise "is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more

predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." Id.

The RICO enterprise must be distinct from the RICO defendant person.[4] St. of Fla. Off. of the Atty. Gen. v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1305 (S.D. Fla. 2005) (citations omitted). "RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or part of the person." Goldin, 219 F.3d at 1276. In short, a plaintiff can sue under RICO an individual corporate employee who engages in a pattern of racketeering activity through his or her corporate enterprise. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163-64 (2001). However, the opposite is untrue—if a plaintiff names a corporation as the defendant person and accuses the corporation of engaging in a pattern of racketeering through an association-in-fact enterprise consisting solely of its employees—no "distinctness" between the person and the enterprise is satisfied. See id.; Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1995). The distinction is necessary "because liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." Acosta v. Campbell, No. 6:04-cv-761-ORL-28DAB, 2006 WL 146208, *6 (M.D. Fla. Jan. 18, 2006) (internal quotation marks and citations omitted).

Millman correctly points out that as pleaded, Smart Science's Amended Complaint names PMSI as the "defendant person" who is accused of engaging in a pattern of racketeering activity through its employees, which include Millman. The Amended Complaint specifically alleges that

---

[4] In explaining the distinctness requirement that the enterprise must be more than a subdivision or part of the person, courts have adopted the terms "defendant person" or "RICO person" to distinguish between the "person" and the "enterprise" which must be identified as separate and distinct entities. See, e.g., Goldin, 219 F.3d at 1276; Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp., 502 F. Supp. 2d 1237, 1253 (S.D. Fla. 2007); Lockheed Martin Corp. v. Boeing Co., 314 F. Supp. 2d 1198 (M.D. Fla. 2004).

PMSI is "engaged in the widespread criminal practice of procuring large numbers of consumer products from manufacturers (such as Plaintiff) . . . under false and fraudulent pretenses." (Amend. Compl. ¶ 16) Other paragraphs discuss PMSI's alleged operation of the racketeering enterprise and illicit patterns of criminal activity. (Id. at ¶¶ 41, 42, 43, 45, 46, 47, 48, 69, 70, 71)  As for Millman, the Amended Complaint claims that she was PMSI's Chief Executive and "mastermind" of the alleged fraud. (Id. at ¶¶ 20, 35)

But Smart Science also pleads that PMSI (and only PMSI) is the enterprise, effectively alleging that PMSI conducted the pattern of racketeering activity through itself. (Id. at ¶¶ 19, 34, 41, 70)  As pleaded, PMSI allegedly perpetuated its fraud through Millman and other PMSI employees, not vice versa.  Accordingly, Smart Science has not met the distinctness requirement because it alleges that the enterprise is merely a subdivision or part of the RICO defendant person.[5] See also Kindred v. Murphy, No. 8:07-cv-1002-T-30EAJ, 2008 WL 476220, *3 (M.D. Fla. Feb. 19, 2008) (dismissing RICO claim because the alleged enterprise and the defendant person were one in the

---

[5] At oral argument, Smart Science asserted that PMSI and http://www.nationwidebrands.com are the enterprise by association-in-fact.  To satisfy the distinctness requirement, http://www.nationwidebrands.com must be a legal entity that is beyond PMSI's control.  See Chappaqua, 30 F.3d at 344.  Because Smart Science contends that the enterprise is an association-in-fact, the "crucial factor is whether each entity alleged to be part of the association-in-fact is free to act independently and advance its own interests contrary to those of the other entities." Tenet, 420 F. Supp. 2d at 1305 (internal quotation marks and citations omitted).  Nothing in the Amended Complaint suggests that the website http://www.nationwidebrands.com is anything more than a subdivision or part of PMSI.  Throughout the Amended Complaint Smart Science refers to PMSI as "PMSI-NATIONWIDE" but fails to properly plead http://www.nationwidebrands.com as a defendant; indeed, Smart Science's reference to "PMSI-NATIONWIDE" suggests that the two are one in the same.  In the Amended Complaint, PMSI used the website http://www.nationwidebrands.com to distribute sample products directly to consumers. (Amend. Compl. ¶ 46)  Smart Science pleads no facts that would suggest that http://www.nationwidebrands.com is an entity distinct from PMSI that is free to act independently of PMSI or advance its own interests.

same). Thus, Smart Science's federal RICO claim against Millman cannot survive dismissal.

Further, the predicate acts that form the basis for Smart Science's RICO claim against Millman are mail and wire fraud. But the allegations of mail and wire fraud are against only PMSI. (Amend. Compl. ¶¶ 43-47, 70) Although Smart Science alleges that Millman was the mastermind of the fraud, absent is any factual allegation about Millman's involvement in specific acts of mail and wire fraud as required by Rule 9(b), Federal Rules of Civil Procedure. Thus, Smart Science has not sufficiently alleged the predicate acts necessary to establish a pattern of racketeering activity against Millman.

To the extent that Smart Science claims that Millman is liable under 18 U.S.C. §§ 1962(a) or (b), those claims are also subject to dismissal. Absent from the Amended Complaint is any allegation of Millman deriving income from racketeering activity or any allegation of injury to Smart Science by reason of Millman investing income or proceeds derived from racketeering activity. See 18 U.S.C. § 1962(a); St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 441 (5th Cir. 2000). Likewise, Smart Science fails to allege injury by reason of Millman's acquisition or control of an enterprise through a pattern of racketeering activity. See 18 U.S.C. § 1962(b). Finally, any claim that Millman is liable for conspiracy to violate the RICO statute under 18 U.S.C. § 1962(d) is insufficient because Smart Science does not allege that Millman was acting in any capacity other than PMSI's Chief Executive Officer. See Colonial Penn Ins. Co. v. Value Rent-A-Car Inc., 814 F. Supp. 1084, 1097 (S.D. Fla. 1992) ("While conducting company business, an officer . . . cannot conspire with the corporation of which he forms an indispensable part.").

Therefore, Count IV should be dismissed against Millman. It is unnecessary to reach the sufficiency of the remaining state law claims at this juncture because this court's jurisdiction turns

on whether Millman is a Florida resident, as discussed in Part III, infra.

> **b.** **Quality King's Motion to Dismiss (Dkt. 32)**

Smart Science has pleaded only Count IV (federal RICO claim) against Quality King. Smart Science conceded at the hearing that Count V (Florida RICO claim) fails to sufficiently plead Quality King as a defendant. Thus, Count V should be dismissed as to this defendant.

As for Count IV, paragraphs 74 through 83 of the Amended Complaint outline Smart Science's federal RICO allegations against Quality King. Smart Science alleges that between March 2003 and September 2003,[6] Quality King purchased JointFlex from PMSI and another company named A.M. Value. (Amend. Compl. ¶ 76) According to Smart Science, A.M. Value (who is not a defendant in this case) from March 2003 to 2004 defrauded Smart Science in the same manner as PMSI. (Id. at ¶ 75) Smart Science asserts that Millman and PMSI's other principals learned of the fraudulent scheme as former employees of A.M. Value and implemented the scheme at PMSI.[7] (Id.)

Smart Science claims that Quality King, as a wholesaler purchasing JointFlex from A.M. Value and PMSI, knew (or had reason to know by virtue of their knowledge of the over-the-counter drug industry) that the JointFlex goods were "stolen goods" obtained by larceny through multiple instances of mail and wire fraud. (Amend. Compl. ¶¶ 76, 78) Allegedly, no legal title for the goods passed to Quality King because Quality King's knowledge that the goods were obtained through

---

[6] In one instance the Amended Complaint alleges that Quality King purchased JointFlex between March 2003 and September 2004, but counsel for Smart Science clarified at oral argument that this allegation contained a typographical error and should have read "September 2003." (Amend. Compl. ¶ 76)

[7] Smart Science has a separate case against A.M. Value in this court: case number 8:03-CV-2728-T-17EAJ, which is now closed. Plaintiff argues that the Amended Complaint here should not be dismissed because it was patterned after the complaint in the A.M. Value case which this court allowed to stand. This argument is without merit.

fraud precluded Quality King as a good faith purchaser for value under the Uniform Commercial Code.  (Id. at ¶ 76)  Based on its imputed knowledge, Quality King allegedly caused "the receipt, possession, sale, and disposition of" stolen property having a value in excess of $5,000.00, which property had crossed a state boundary after being stolen through larceny. (Id. at ¶¶ 77, 79) Smart Science further alleges that Quality King and "John Doe" wholesalers and retailers, knowing that the goods were stolen, bought and sold the goods among themselves and in interstate commerce. (Id. at ¶¶ 81, 82)  Thus, according to Smart Science, Quality King's alleged buying, selling, and trafficking of stolen drugs violates the National Stolen Property Act, 18 U.S.C. § 2315, et seq. ("NSPA"), and therefore constitutes "the RICO predicate act." (Id. at ¶ 80)

Smart Science's allegations therefore appear to assert liability against Quality King under 18 U.S.C. § 1962(c) (which is directed at activities that affect interstate commerce through racketeering activity) and possibly 18 U.S.C. § 1962(d) (conspiracy to violate 18 U.S.C. §§ 1962(a)-(c)). As a preliminary matter, to the extent that Smart Science claims that Quality King violated 18 U.S.C. §§ 1962(a) or (b), those claims are subject to dismissal.  Absent from the Amended Complaint is any allegation about how Quality King used or invested proceeds from racketeering to acquire or operate an enterprise. See 18 U.S.C. § 1962(a).  Further, Smart Science fails to allege that Quality King has acquired or maintained an interest in or control of an enterprise through a pattern of racketeering activity. See 18 U.S.C. § 1962(b).

Quality King challenges Smart Science's RICO claim against it under 18 U.S.C. § 1962(c) on several grounds.  Quality King argues that Smart Science fails to properly plead a RICO enterprise—specifically, that Smart Science fails to sufficiently plead the enterprise's structure or the goal and management of the enterprise. Quality King also contends that Smart Science fails to

properly allege the necessary predicate acts or sufficiently allege a pattern of racketeering.

           1.    <u>Enterprise</u>

Quality King argues that Smart Science's attempt to plead an enterprise fails for the following reasons: (1) the Amended Complaint contains allegations that PMSI is the enterprise, which allegations are insufficient to articulate an enterprise because a distinct enterprise cannot exist by pleading only a single entity conducting its regular business activities; (2) Smart Science's attempt to describe an enterprise among Quality King and fictitious "John Doe" defendants cannot stand under established circuit precedent; (3) absent from the Amended Complaint is any factual allegation of the structure of a distinct enterprise that exists separate and apart from the commission of the predicate acts; (4) the Amended Complaint does not allege a "common goal" of the enterprise or that Quality King participated in the decision making and management of the enterprise; and (5) no allegations exist that support the required element that Quality King "conducted" or "directed" the supposed enterprise (Dkt. 32 at 10-13).

Smart Science responds that Quality King is its own enterprise aiding, abetting, and conspiring with Millman's three enterprises: PMSI, http://www.nationwidebrands.com, and a combination of PMSI and http://www.nationwidebrands.com by association-in-fact (Dkt. 48 at 16). Also according to Smart Science, the "John Doe" defendants (or other wholesalers) are not part of the enterprise itself, but may be Quality King's co-conspirators in the "fencing chain" of distribution to consumers in the retail stores (<u>Id.</u>).  At oral argument, Smart Science asserted that PMSI and http://www.nationwidebrands.com are the enterprise by association-in-fact; however, Smart Science has not advanced a coherent argument showing that Quality King is part of the enterprise.

    As previously discussed, the Amended Complaint does not meet the distinctness

requirement because it pleads PMSI as the RICO defendant person as well as the enterprise.  For liability to attach to a corporate entity as a defendant person, the corporation must "associate[] with others to form an enterprise that is sufficiently distinct from itself." Chappaqua, 30 F.3d at 344. Smart Science's allegations are insufficient to implicate Quality King as part of the structure or management of the enterprise.   Further, no allegations in the Amended Complaint suggest that Quality King is a defendant person and also "part of the union of corporations which was the enterprise." See Goldin, 219 F.3d at 1276.  Absent from the Amended Complaint are any facts about Quality King's association with the enterprise for a common goal or purpose or Quality King's part in or control over the enterprise's management or decision making. On this basis alone, Count IV should be dismissed against Quality King.

### 2.    Pattern of Racketeering Activity

Even if Smart Science had properly pleaded an enterprise, Smart Science has not sufficiently alleged a pattern of racketeering activity.

Quality King argues that the Amended Complaint fails to allege a pattern of racketeering activity for the following reasons: (1) Smart Science's allegations of mail and wire fraud (the predicate acts) are directed only at PMSI's promotion of services and do not involve Quality King; (2) Quality King did not violate the NSPA and notwithstanding, lost profits are not goods under the Act; (3) Smart Science fails to plead scienter or satisfy Rule 9, Federal Rule of Civil Procedure's pleading requirements with regard to Quality King's alleged violation of the NSPA; (4) Smart Science alleges only one predicate act as to Quality King; and (5) Smart Science fails to sufficiently plead a pattern of racketeering against Quality King because Smart Science sold the goods to PMSI only between May and August 2003 (Dkt. 32 at 13-18).

It is unclear whether Smart Science maintains that the predicate acts committed by Quality King were mail and wire fraud or violations of the NSPA.  Smart Science submits that the court may infer the existence of mail and wire fraud transactions between Quality King and the other enterprises because Quality King was essentially trafficking in stolen goods in violation of the NSPA and knew or should have known that the goods were stolen (Dkt. 48 at 18).

Both the mail fraud and wire fraud statutes (18 U.S.C. § 1341 and 18 U.S.C. § 1343, respectively) are subject to the heightened pleading requirements of Rule 9(b), Federal Rules of Civil Procedure, under which a plaintiff is required to plead with particularity its averments of fraud.  See Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997) (discussing the plaintiffs' failure to plead mail and wire fraud with particularity); see also Outlet Commc'ns, Inc. v. King World Prods., Inc., 685 F. Supp. 1570, 1579 (M.D. Fla. 1988).  Both statutes also require proof of scienter. Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 949 (11th Cir. 1997).  Although a RICO plaintiff need not offer direct proof of scienter, "allegations of scienter cannot be merely conclusory and unsupported by any factual allegations." Portionpac Chem. Corp. v. Sanitech Sys. Inc., 210 F. Supp. 2d 1302, 1307 (M.D. Fla. 2002) (citation omitted).  Smart Science's only allegation pertaining to Quality King's supposed mail or wire fraud is that Quality King "knew or should have known" that the goods were stolen by virtue of its knowledge of the over-the-counter drug industry and demand for the product. (Amend. Compl. ¶ 78) This conclusory and factually unsupported allegation fails to meet the particularity requirement of Rule 9(b) and is therefore insufficient to demonstrate that Quality King had the scienter necessary to commit mail or wire fraud.  See Bill Buck Chevrolet, Inc. v. GTE Fla., Inc., 54 F. Supp. 2d 1127, 1133 (M.D. Fla. 1999) (finding the complaint's allegations that the Defendant

"knew or should have known" about fraudulent conduct insufficient to plead scienter and state a RICO claim).

For Smart Science to sufficiently allege that a violation of Section 2315 of the NSPA constitutes a predicate act, Smart Science must claim (1) that Quality King received, possessed, concealed, stored, or disposed of stolen goods; (2) that such goods had a value in excess of $5,000; (3) that such goods crossed a State or United States boundary after having been stolen or unlawfully converted; and (4) that Quality King knew that the goods had been stolen or unlawfully converted. 18 U.S.C. § 2315.  Conclusory allegations are insufficient to establish the requisite intent.  BCCI Holdings, 119 F.3d at 949 (citations omitted).  The only factual allegation of scienter is that Quality King "knew or should have known" that the goods were stolen by virtue of Quality King's knowledge of the over-the-counter drug industry and the demand for the product.  (Amend. Compl. ¶ 78)  This allegation, without more, does "not give rise to a strong inference that [Quality King] possessed the requisite factual intent."  BCCI Holdings, 119 F.3d at 949 (internal quotation marks and citations omitted); see also Comcast of S. Fla. II, Inc. v. Best Cable Supply, Inc., No. 07-22335-CIV, 2008 WL 190584, *5 (S.D. Fla. Jan. 22, 2008) (analyzing the plaintiff's allegations of scienter under Section 2315 in light of the facts pleaded).  Thus, Smart Science has failed to plead that Quality King committed the requisite predicate acts to maintain a RICO claim. See Brooks, 116 F.3d at 1381 (citations omitted) ("These allegations provide no basis in fact upon which the Court could conclude that any specific act . . . is indictable for mail or wire fraud.")

Smart Science has also failed to sufficiently plead the pattern of racketeering activity.  A plaintiff must demonstrate both that the predicate acts are related and that they either constitute or threaten long-term criminal activity (commonly referred to as "relationship plus continuity").  H.J.,

Inc., 492 U.S. at 239.  Quality King contends that under either a closed-ended or open-ended theory, Smart Science's allegations are insufficient.  As clarified at oral argument, Smart Science proceeds under the open-ended continuity theory.[8]

To state a claim based on open-ended continuity, a plaintiff must allege facts to support that "either . . . the alleged acts were part of the defendants' regular way of doing business, or that the illegal acts threatened repetition in the future."  Id. at 1267 (internal quotation marks and citation omitted). Smart Science argues that Defendants will continue this conduct into the future as to other "phantom" victims who are not yet known. This is insufficient to allege open-ended continuity. See id. at 1268-69 (dismissing the plaintiffs' "bald suggestion" that the defendants might have continued their fraud in the future had they not been uncovered as insufficient to allege open-ended continuity). Further, no facts in the Amended Complaint indicate that PMSI continued to perpetrate the alleged fraud against Smart Science after August 2003, when Smart Science terminated the contract with PMSI and ceased filling PMSI's orders.  Under these facts, it is impossible that the alleged illegal acts could have continued indefinitely into the future because the alleged fraudulent acts were limited in duration—Smart Science stopped doing all business with PMSI in August 2003 when Smart Science discovered the alleged fraud.

Faced with this obstacle, Smart Science also submits that it has evidence that during the last five years PMSI committed similar frauds against "other manufacturers" including California's

---

[8] Although Smart Science does not argue a closed-ended theory, Smart Science's allegations fail to state facts sufficient to establish closed-ended continuity.  Undisputed is that the specific incidents of mail and wire fraud alleged occurred over only a four-month period of time from May to August 2003 because Smart Science ceased filling purchase orders and shipping the goods to PMSI after August 2003. (Amend. Compl. ¶¶ 46-48) Four months is too short a time period to qualify Plaintiff's activities as a pattern of racketeering activity. See Jackson, 372 F.3d at 1266-67 (citations omitted).

18

Woodward Laboratories, showing that the fraudulent conduct alleged is PMSI's regular way of doing business. (Amend. Compl. ¶ 71) Even if PMSI has previously defrauded other manufacturers, Smart Science's allegations do not allege a sufficiently continuous pattern to meet the heightened pleading standards for fraud.  See, e.g., Aeropower, Ltd. v. Matherly, 511 F. Supp. 2d 1139, 1152-53 (M.D. Ala. 2007) (noting that conclusory general allegations of conduct as a regular way of doing business, without prior examples of how the alleged conduct factors in with the defendants' regular business practices, are insufficient to survive a motion to dismiss). Absent from the Amended Complaint are details about who the "other manufacturers" are, the time, place, and manner of the similar frauds, and the number of fraudulent instances that occurred.  Smart Science's Section 1962(c) claim against Quality King should therefore be dismissed for failure to sufficiently allege a pattern of racketeering activity.

### 3.   RICO Conspiracy

As for Smart Science's conspiracy claim under 18 U.S.C. § 1962(d), Quality King contends that Smart Science fails to plead even a conclusory allegation of conspiracy to violate §§ 1962(a)-(c). (Dkt. 32 at 18-19).  See 18 U.S.C. § 1962(d).  Smart Science did not respond to this argument in its opposing papers.

"[A] party may be liable for a RICO conspiracy claim even if it is not liable for the substantive RICO offense." Jackson, 372 F.3d at 1269 (citations omitted).  But a claim of RICO conspiracy requires a plaintiff to allege "an illegal agreement to violate a substantive provision of the RICO statute." Id.  A plaintiff must allege "that the defendants objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes." United States v. Starrett, 55 F.3d 1525, 1543

(11th Cir. 1995) (internal quotation marks and citations omitted).  "The focus is on the agreement to participate in the enterprise through the pattern of racketeering activity, not on the agreement to commit the individual predicate acts." <u>Id.</u>

Smart Science may prove Quality King's agreement "(1) by showing an agreement on an overall objective, or (2) by showing that [Quality King] agreed personally to commit two predicate acts and therefore to participate in a 'single objective' conspiracy." <u>Id.</u> at 1544 (citations omitted). The RICO conspiracy may be inferred from the parties' conduct (as opposed to supported by direct evidence), and the court "can look to whether the defendant's actions manifested an agreement to participate in the alleged racketeering activity." <u>Tenet</u>, 420 F. Supp. 2d at 1308 (internal quotation marks and citations omitted). Further, the agreed upon act must be illegal—"parties cannot be found guilty of conspiring to commit an act that is not itself against the law." <u>Id.</u>

Smart Science also fails to allege an illegal agreement between Defendants and Quality King. Absent from the Amended Complaint are any allegations that Quality King agreed to violate the RICO statute.  Further, because the Amended Complaint fails to state a substantive RICO claim against Quality King, Smart Science's conspiracy claim against Quality King cannot stand because the underlying conduct as alleged does not constitute a RICO violation.

## III.    <u>Conclusion</u>

In concluding that Smart Science's federal RICO claim fails to state a claim against Millman and Quality King as pleaded, the undersigned recommends that the Amended Complaint be dismissed without prejudice, affording Smart Science one final opportunity to amend the complaint

to cure the defects.[9]

Notwithstanding, a RICO claim is not the appropriate forum in which to litigate a breach of contract case. See Sanchez v. Triple-S Mgmt. Corp., 492 F.3d 1, 12 (1st Cir. 2007) ("breach of contract itself [does not] constitute a scheme to defraud"); Perlman v. Zell, 185 F.3d 850, 853 (7th Cir. 1999) ("Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO.").

Finally, if Millman was a Florida citizen at the time of the Complaint's filing as she maintains, no diversity jurisdiction would exist in the absence of federal question jurisdiction. Thus, Smart Science is on notice that Millman has raised this argument and should conduct due diligence to determine the basis of this court's subject matter jurisdiction before filing an amended complaint.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     Defendant Adrianne Millman's motion to dismiss be **GRANTED** and Counts IV and V be

dismissed without prejudice;

_____

[9] Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Unless a substantial reason exists to deny leave to amend, the discretion of the District Court is not broad enough to permit denial." Fla. Evergreen Foliage v. E.I. Dupont de Nemours, 470 F.3d 1036, 1041 (11th Cir. 2006) (internal quotation marks and citation omitted). Futility of amendment may be a substantial reason to deny leave to amend. Id. In recommending one final opportunity to amend in the interest of justice, the court must note the dubiousness of Smart Science's ability to plead the continuous nature of the racketeering activity if the alleged criminal conduct indeed ceased in August 2003. Plaintiff has already had one opportunity to amend the complaint and Smart Science's counsel appears to be well-versed in RICO law and aware of RICO's strict pleading requirements. Thus, Smart Science must be cautioned that should it elect to amend the complaint—especially in light of the recently filed Rule 11 motion for sanctions filed by Quality King—the court may consider imposing sanctions if the amended complaint fails to include specific allegations about the structure of the enterprise, the predicate acts, the relevant time periods, the continuous nature of the racketeering activity, and use of funds by the enterprise sufficient to meet the pleading requirements for claims of this sort.

(2)     Defendant Quality King's motion be **GRANTED** and all claims against Quality King be

        dismissed without prejudice;

(3)     Smart Science be afforded a final opportunity to file an amended complaint; and

(4)     Smart Science's failure to file an amended complaint consistent with the cautions in this

        order should result in Counts IV and V being dismissed with prejudice and the court

        declining to exercise supplemental jurisdiction over the remaining state law claims against

        Defendant Millman.

**Date:   June 27, 2008**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of this service shall bar an aggrieved party from

attacking the factual findings on appeal and a de novo determination by a District Judge.  See 28

U.S.C. §636(b)(1).

Copies to:
Counsel of Record
District Judge

22