## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SMART SCIENCE LABORATORIES,**
**INC., a Florida corporation,**

    **Plaintiff,**

v.                                  **CASE NO. 8:07-CV-1554-T-24EAJ**

**PROMOTIONAL MARKETING**
**SERVICES, INC., et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Before the court are **Quality King Distributors, Inc.'s Motion Pursuant to Fed. R. Civ. P. 11 for Sanctions Against Smart Science Laboratories, Inc. and Its Counsel** (Dkt. 71), **Plaintiff Smart Science's Opposition** (Dkt. 77), **Quality King Distributors, Inc.'s Request for Oral Argument on Its Motion for Sanctions** (Dkt. 66), and **Plaintiff Smart Science's Opposition to Defendant Quality King's Request for Oral Argument** (Dkt. 79).[1]

Defendant Quality King Distributors, Inc.'s ("Quality King") request for oral argument is denied. See Local Rule 3.01(j), M.D. Fla. After consideration, the undersigned recommends that Quality King's motion for sanctions (Dkt. 71) be denied without prejudice.

**I.     Background**

Quality King is one of multiple defendants sued by Plaintiff Smart Science Laboratories, Inc. ("Smart Science") for breach of contract, fraud, negligent misrepresentation, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), violations

---

[1] The district judge referred these matters to the undersigned for consideration and the issuance of a report and recommendation (Dkt. 68). See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

of the Florida RICO Act, Fla. Stat. § 895.01, et seq., and violations of the Florida Civil Remedies for Criminal Practices Act ("CRCPA"), Fla. Stat. § 772.101, et seq. Smart Science filed its First Amended Complaint on November 8, 2007, in which Smart Science alleged against Quality King only Count IV, the federal RICO claim. (Dkt. 10; Amend. Compl. ¶¶ 74-83; Dkts. 81, 82)

Briefly,[2] Smart Science manufactures "JointFlex," an over-the-counter topical cream, and contracted in May 2003 with Defendant Promotional Marketing Services, Inc. ("PMSI") to sell promotional tubes of JointFlex to PMSI at a discounted price for inclusion in a promotional sampling package. Smart Science alleged that PMSI agreed not to sell or distribute JointFlex directly to the retail market. In August 2003, Smart Science stopped filling PMSI's orders for JointFlex after suspecting that PMSI had breached the contract by selling the product to wholesalers, product diverters, and others who would then resell the product to retailers at greatly reduced prices. Smart Science's First Amended Complaint alleged that PMSI's conduct was a fraudulent scheme that violated federal and state RICO laws. Quality King was alleged to be a wholesaler or product diverter that participated with PMSI to perpetuate the fraud. (Amend. Compl. at ¶¶ 23, 25, 38, 76)

After a default was entered against PMSI, all of the remaining named defendants except for Quality King and Adrienne Millman ("Millman") were dismissed for failure to file proof of service. Quality King and Millman each moved to dismiss for failure to state a claim. Following oral argument, the undersigned recommended that both Quality King's and Millman's motions be granted and the complaint be dismissed without prejudice, affording Smart Science one final opportunity to amend. Smart Science was cautioned about the possibility of sanctions should the

---

[2] The background facts relevant to the federal RICO claim are set forth fully in the June 27, 2008 report and recommendation (Dkt. 81).

amended complaint fail to sufficiently plead a RICO claim (Dkt. 81 at n.9). The district judge adopted the undersigned's recommendations, granted the motions, dismissed Smart Science's claims without prejudice, and allowed Smart Science one final opportunity to amend the complaint on or before September 3, 2008 (Dkts. 82, 84).

Quality King now moves under Rule 11, Federal Rules of Civil Procedure, for sanctions against Smart Science and its counsel for engaging in "frivolous conduct" by asserting the RICO claim against Quality King "without a good faith basis" (Dkt. 71 at 2).

**II.     Rule 11 Standard**

Rule 11 sanctions may be awarded, after notice and a reasonable opportunity to be heard, "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996) (citation omitted); see Fed. R. Civ. P. 11(b), (c). "The standard for testing conduct under . . . Rule 11 is 'reasonableness under the circumstances.'" Anderson v. Smithfield Foods, Inc., 353 F.3d 912, 915 (11th Cir. 2003) (citations omitted). "Sanctions are warranted when a party exhibits a deliberate indifference to obvious facts, but not when the party's evidence to support a claim is merely weak." Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1294 (11th Cir. 2002) (internal quotation marks and citations omitted).

**III.    Analysis**

Quality King's motion for sanctions is founded on Smart Science's allegation in the First Amended Complaint that Quality King "knew or had reason to know" that the goods Quality King

purchased from PMSI were "obtained by theft" and were "stolen goods." (Dkt. 71 at 2, 4; Amend. Compl. ¶¶ 76-78) In responding to Quality King's motion to dismiss, Smart Science stated that Quality King purchased JointFlex from PMSI "at a price lower than the usual SmartScience domestic price" (Dkt. 48 at 6). Quality King's position, therefore, is that Smart Science seeks to impute to Quality King the knowledge that the goods were "stolen" by claiming that "Quality King purchased the products from PMSI at a price so low that it would have been obvious the goods were fraudulently obtained" (Dkt. 71 at 2).

Thus, as its basis for seeking Rule 11 sanctions, Quality King submits that Smart Science never had evidence to support its position that Quality King purchased JointFlex from PMSI at a "low price" and never pleaded any facts in support of that contention. (Dkt. 71 at 2, 4; Amend. Compl. ¶¶ 76-78) Quality King asserts that instead, Smart Science always had documents in its possession demonstrating that the price Quality King paid PMSI for JointFlex was the highest price Quality King ever paid any of its suppliers for the product (Dkt. 71 at 7). Specifically, Smart Science's documents allegedly show that Quality King paid PMSI $83.00-$85.20 per case for JointFlex but paid other suppliers $81.00-$83.00 per case (Dkt. 71 at 5). Quality King thus concludes that Smart Science falsely alleged that Quality King "knew or should have known," because of the price it paid PMSI for JointFlex, that the product was obtained through fraud.[3]

Quality King's motion for sanctions is premature. Nothing in the First Amended Complaint

---

[3] Smart Science responds that the lowest legitimate price at which Smart Science sold JointFlex was $9.95 per unit (or $119.40 per case) and that these legitimate prices are over forty percent above the highest price at which Quality King acquired JointFlex from any supplier. Thus, Smart Science contends, it was not fraudulent for Smart Science to allege that Quality King "knew or should have known" that the prices at which it obtained JointFlex from PMSI were artificially low (Dkt. 77 at 3, 5). However, due to the present state of the record, the court finds it unnecessary to resolve these different interpretations.

alleges that Quality King paid PMSI a "low price" for JointFlex but rather that Quality King "knew or had reason to know" that the goods were stolen "by virtue of [its] knowledge of the OTC drug industry and the demand for the product." (Amend. Compl. ¶ 78) The court addressed in its dismissal order the defectiveness of the pleadings against Quality King, specifically discussing the defectiveness of the scienter requirement as to the allegedly stolen goods, and granted Smart Science leave to amend to address the defects (Dkts. 81, 82).

It does not appear, at this stage, that Smart Science misrepresented the facts in the First Amended Complaint in violation of Rule 11. This does not mean that Rule 11 sanctions could not be warranted in the future if Smart Science fails to re-plead a legally cognizable claim. See Carousel Foods of Am., Inc. v. Abrams & Co., Inc., 423 F. Supp. 2d 119, 123-24 (S.D.N.Y. 2006) (sanctioning the plaintiff and its attorney under Rule 11 for failing to correct RICO pleading defects in an amended complaint after denying a first Rule 11 motion for sanctions without prejudice). The court has allowed Smart Science an opportunity to amend the complaint to cure the pleading defects, with a clear warning that sanctions may be warranted if a re-pleaded RICO claim is not factually supported (Dkts. 81, 82).

### III.   Conclusion

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   Quality King Distributors, Inc.'s Motion Pursuant to Fed. R. Civ. P. 11 for Sanctions Against Smart Science Laboratories, Inc. and Its Counsel (Dkt. 71) be **DENIED WITHOUT PREJUDICE**.

**Date:   August 8th 2008**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal and a de novo determination by a District Judge.  See 28 U.S.C. §636(b)(1).

Copies to:
Counsel of Record
District Judge